802 So.2d 523 (2001)
Brenda M. KERSEY, Appellant,
v.
Joseph C. KERSEY, Appellee.
No. 1D01-240.
District Court of Appeal of Florida, First District.
December 31, 2001.
*524 Judy C. Ossi, Alicia R. Westhoff, and Scott D. Makar of Holland & Knight LLP, Jacksonville, for Appellant.
Kristin Adamson and Jerome M. Novey of Novey, Mendelson & Adamson, Tallahassee; B.J. Layne, Jacksonville, for Appellee.
ERVIN, J.
Brenda Kersey, the former wife, appeals from a final judgment of dissolution, contending that the lower court erred in (1) relying upon an oral prenuptial agreement to bar her claim for alimony on the ground that the agreement was unenforceable under the Statute of Frauds, section 725.01, Florida Statutes (1999); (2) ordering a distribution of marital assets and debts without hearing evidence or making findings of fact thereon; and (3) denying her claim for attorney's fees and costs without hearing evidence or making factual findings on her claim. We affirm issue two without comment, and reverse and remand as to issues one and three for further proceedings consistent with this opinion.
The parties have been twice married; the first continued for nearly thirty years, or until January 3, 1997, when a final judgment of dissolution was entered awarding the former wife $600 a month in permanent, periodic alimony. The parties married a second time on August 21, 1999, but they separated after only five days. In her petition for dissolution of the second marriage, the wife sought an award of $600 a month permanent, periodic alimony, the same amount she had been awarded in the first dissolution. The husband, in his answer and counter-petition, maintained that the parties had orally agreed before the wedding that the payments of alimony would cease upon remarriage.
The parties' deposition testimony regarding the alleged oral agreement was conflicting. While both admitted they had discussed the alimony's termination upon remarriage, the wife contended that the husband had assured her he would take care of her financially, that her bills would be satisfied, and a motor home purchased for their use. She added that she would not have remarried him if he had not made those promises. The husband, on the other hand, testified that they both had agreed that the wife would lose her entitlement to alimony after remarriage, and he denied making any promise to care for her financially or to pay any of her bills.
Following the hearing on the petitions, the court entered a final judgment dissolving the marriage and ordering that no alimony of any kind would be payable. In so doing, the court found that the parties had entered into a premarital agreement in which both had concurred that alimony would be terminated upon remarriage and that no alimony would be required if the second marriage ended in dissolution. The court further ordered that the parties be deemed owners of their own individual property brought with them into their brief marriage, and that they be responsible for their own attorney's fees.
In addressing the former wife's contention that the lower court erred in considering the parties' oral prenuptial agreement, we note that the court found not only had the parties agreed upon remarriage that all alimony would be terminated, but also "that no alimony would be required to be paid by the Husband in the event this marriage resulted in a dissolution." Although there is support in the record for the former finding, there is no competent, substantial evidence to support *525 a finding that the wife agreed to forgo alimony upon dissolution of the second marriage, and the trial court erred in so finding.
Even if the oral agreement could be construed to mean that the parties had stipulated that no alimony would be paid upon a second dissolution, such agreement would be unenforceable by application of the Statute of Frauds. Section 725.01, which generally bars any action based on an agreement in consideration of marriage unless in writing, has been interpreted as permitting consideration of such oral contracts if performed within one year.[1]See Yates v. Ball, 132 Fla. 132, 181 So. 341 (1937). The former husband argues that his complete performance of the agreement by marrying the wife within one year took the oral agreement out of the Statute of Frauds. We cannot agree. The Florida Supreme Court approved the rule in Miller v. Greene, 104 So.2d 457, 461 (Fla. 1958), that marriage is not by itself "sufficient part performance to take a parol antenuptial agreement out of the Statute." In the case at bar, marriage is the only performance carried out by the former husband pursuant to the agreement. Compare the facts herein with those in O'Shea v. O'Shea, 221 So.2d 223 (Fla. 4th DCA 1969), in which an oral, prenuptial agreement was enforced on facts showing that both parties had fully performed their promises.[2]
Because the court erred in deciding that the former wife was not entitled to payment of alimony upon dissolution of the second marriage based solely upon the parties' oral agreement, the order of denial is reversed and the case is remanded to the lower court for determination of the wife's entitlement to alimony in any amount, based on evidence other than the agreement. In reaching its decision, the court should consider the criteria discussed in Thomas v. Thomas, 571 So.2d 499, 503 (Fla. 1st DCA 1990).
We also reverse the trial court's denial of attorney's fees and costs. In their pretrial stipulation, the parties reserved the issue of fees for consideration subsequent to the final hearing. This stipulation removed the issue of attorney's fees from contention at the time of trial, and the trial court should not have determined the issue without first holding an additional hearing or providing notice and opportunity to the parties. See Vick v. Vick, 675 So.2d 714, 718 (Fla. 5th DCA 1996).
AFFIRMED in part, REVERSED in part, and REMANDED.
DAVIS, J., CONCURS. KAHN, J., CONCURS WITH WRITTEN OPINION.
KAHN, J., concurring.
I completely agree with Judge Ervin's reasoning. Appellee's suggestion that the *526 act of marriage removed the purported oral agreement from the operation of the Statute of Frauds would, if carried to its logical extent, nullify the very portion of the Statute that compels the result we have reached in this case.
As noted in the majority opinion, the Statute, section 725.01, Florida Statutes (1999), provides, in pertinent part, that an action "to charge any person upon any agreement made upon consideration of marriage" shall not be maintained in the absence of a written note or memorandum memorializing such agreement, and signed by the party to be charged. Relying upon O'Shea v. O'Shea, 221 So.2d 223 (Fla. 4th DCA 1969), appellee argues that when Mr. Kersey married Mrs. Kersey, he accomplished part performance of the agreement so as to remove the agreement from the operation of the Statute of Frauds. This argument does not work because the very object of an antenuptial agreement is the marriage.
Where the agreement purports to establish rights upon dissolutionthe position here urged by Mr. Kerseyno one would seek to enforce the agreement in the absence of a marriage. Therefore, if the act of marriage is sufficient to remove such an agreement from the operation of the Statute of Frauds, the Statute itself would be superfluous. See Busque v. Marcou, 147 Me. 289, 86 A.2d 873, 876 (1952) ("In the case of a verbal contract made in consideration of marriage, ... the marriage alone, even though it is in an irretrievable change of position, is not a part performance upon which equitable relief can be based .... [I]t is the consideration of the contract which brings it within the statute, not the nature of the promise made. To say that... the bar of the statute is removed ... by the marriage itself would destroy the statute and make it meaningless."). Anyone seeking to enforce a verbal antenuptial agreement would simply have to allege and prove that he or she entered into the marriage, an act that is obviously a necessary precondition to the dissolution action. See Tellez v. Tellez, 51 N.M. 416, 186 P.2d 390, 392 (1947) ("The contract was not complete until the parties married, and the subsequent marriage was in no sense a part performance. The marriage itself was a necessary part of the agreement made upon its consideration.").
NOTES
[1] The statute provides, in pertinent part: "No action shall be brought whereby ... to charge any person upon any agreement made upon consideration of marriage ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith[.]"
[2] We are not unaware that the Fourth District also stated in O'Shea that "partial performance is normally sufficient to remove the transaction from the operation of the statute." Id. at 226. This observation was unnecessary to the court's decision because, as we previously noted, in O'Shea the parties had completely performed. Moreover, O'Shea did not specifically say that marriage in itself is sufficient part performance to take an oral promise outside the ambit of the Statute, contrary to that said in Miller v. Greene. We will therefore assume that the O'Shea statement must have contemplated something more than simply marriage, or remarriage, in order for the Statute to be deemed inoperable.