CANADA v. IHMSEN ET AL*
(No. 1216; Nov. 10, 1925; 240 Pac. 927)

Wills—Testator May Change—Statute of Frauds—Mutual Wills Insufficient to Satisfy Statute of Frauds—Performance as Consideration—Contract to Execute Mutual Wills.

1. Wills are ambulatory in their nature; being revocable at pleasure of testator until his death.

2. In absence of a contract, testator of sound mind may change his will as often as he pleases, and may make a contract to leave his property by will in same manner that he may make a contract to sell it.

3. A "will" being in nature of a conveyance by way of appointment, and a "devisee" being one who takes by purchase, an agreement to devise real estate comes within

Comp. St. 1920, § 4719, providing that every agreement shall be void, unless it or some note or memorandum thereof be in writing and subscribed by party to be charged therewith.

4.   Mutual wills, whereby parties left their separate property reciprocally to each other, *held* not sufficient memoranda to satisfy statute of frauds (Comp. St. 1920, § 4719,) where there was nothing in wills to indicate that they were made pursuant to a contract.

5.   Where only performance of contract to execute wills whereby parties left their separate property reciprocally to each other was fact that plaintiff executed his will in pursuance of a contract which he claimed was made, and that he left will in custody of a third person, it was not sufficient performance on his part to take case out of Comp. St. 1920, § 4719.

6.   Contract to execute mutual wills must not alone be just, but must also be based on a sufficient and valuable consideration, and, when thus supported, will be upheld by the courts.

7.   Contract to execute mutual wills, made by persons who were not related to each other, whereby each left their property reciprocally to each other, *held* not supported by consideration, where it consisted only of promises mutually made and actual execution of wills.

*See Headnotes (1) 40 Cyc. pp. 1073, 1074; (2) 40 Cyc. pp. 1063, 1171 (3) 27 C. J. p. 208; (4) 27 C. J. p. 259 (Anno) (5) 27 C. J. p. 354 (Anno) (6) 40 Cyc. pp. 1064, 1065 (7) 40 Cyc. p. 1065.

ERROR to District Court, Albany County, VOLNEY J. TIDBALL, Judge.

This was an action by Thomas J. Canada against F. J. Ihmsen as administrator with the Will annexed of the Estate of Wiseman M. Hill, deceased and another, to enforce an alleged contract for the execution of mutual Wills. Other material facts are stated in the opinion.

*M. E. Corthell* for plaintiff in error.

The authorities cited by defendants in error in support of their contention that the agreement is within the Statute of Frauds and unenforceable are clearly distinguishable upon the facts.   Their leading case Gould vs. Mansfield,

103 Mass. 408 turned upon the question of consideration and lack of performance. A contract to make mutual Wills followed by the execution of Wills is sufficient to take the case out of the Statute of Frauds; Brown vs. Webster (Nebr.) 134 N. W. 185; Carle vs. Miles (Kan.) 132 Pac. 146; Rastetter vs. Heeninger, (N. Y.) 108 N. E. 210; Bedal vs. Johnson (Ida.) 218 Pac. 641; In re Burke's Estate, (Ore.) 134 Pac. 11; Anderson vs. Anderson (Ia.) 164 N. W. 1042; Baker et al. vs. Daniel, et al, (Mo.) 95 S. W. 347; Chambers vs. Porter (Ia.) 183 N. W. 431; Stevens vs. Myers (Ore.) 177 Pac. 37; Prince vs. Prince (Wash.) 117 Pac. 255; Brown vs. Johanson (Colo.) 194 Pac. 943; the case of In re Edwall's Estate cited by defendant in error and Brown vs. Webster supra, probably represents a phase of contrarity of opinion to be found in the authorities on the question of consideration. In our opinion the Statute should be qualified and held to mean that the power to make a Will includes the power to revoke the will, except when such Will is made pursuant to a contract; Monson vs. Monson (Calif.) 162 Pac. 90; Stewart vs. Smith (Calif.) 91 Pac. 667; Bruce vs. Moon, (So. Carolina) 35 N. E. 415; Mayfield vs. Cook, (Ala.) 77 So. 713; Baker vs. Syfritt et al, 125 N. W. 998; Huffine vs. Lincoln (Mont.) 160 Pac. 820; the transaction here was a mutual business compact carried out by the execution of mutual Wills; Chambers vs. Porter et al. (Ia.) 183 N. W. 431; Thompson on Wills 28; In Re McGinley's Estate, (Pa.) 101 Atl. 807; Brown vs. Johanson (Colo.) 194 Pac. 943; Stewart vs. Todd (Ia.) 173 N. W. 622; the execution of each Will was a consideration for the other; Frazier vs. Patterson (Ill.) 90 N. E. 218; Torgerson vs. Hauge (N. Dak.) 159 N. W. 7; Carle vs. Miles (Kan.) 132 Pac. 146; Prince vs. Prince (Wash.) 117 Pac. 257; Baker vs. Syfritt (Ia.) 125 N. W. 998; such execution indicates an intention to carry out a previous oral agreement. The following cases involved Wills made pursuant to oral agreements to marry; Farrell vs. Stanley (Kans.) 112 Pac. 155; Freitas vs. Freitas (Calif.) 159 Pac.

611; Adams vs. Smith, 155 N. Y. Suppl. 873; the execution of a Will is part performance; Stewart vs. Todd supra; Swingley vs. Daniels (Wash.) 212 Pac. 731; and is considered a part of the contract; Brown vs. Webster (Nebr.) 134 N. W. 189; Naylor vs. Shelton (Ark.) 143 S. W. 117; Whiton vs. Whiton (Ill.) 53 N. E. 730; Anderson vs. Anderson (Ia.) 164 N. W. 1043; Chambers vs. Porter (Ia.) 183 N. W. 434; Prince vs. Prince supra; the two Wills should be taken together as constituting a written contract; North Platte Milling Co. vs. Price, 4 Wyo. 293.

*E. P. Blakemore* for defendant in error.

Parol evidence is inadmissible to show intent of the testator as to contingencies not appearing on the face of Will; Schouler on Wills, 292; Sewell vs. Slingluff, 57 Md. 537; contingencies affecting land must be in writing; Bispham on Equity, (4th ed.) Chap. 2, p. 95; neither of the Wills import consideration of a contract to make mutual Wills; Schouler on Wills 570; since either Will may be revoked by the maker; Frazier vs. Patterson supra; mutual Wills made pursuant to a valid contract are not revokable; In re Keep 1 Connoly 104; 17 N. Y. S. R. 812; the Wills did not take the case out of the Statute; McClanahan vs. McClanahan (Wash.) 137 Pac. 479; plaintiff in error is incompetent to testify 5807 C. S. Rice vs. Wigley (Ida.) 61 Pac. 290; Woods vs. Fox (Utah) 32 Pac. 48, 166 U. S. 641; Paddock vs. Adams (Ohio) 46 N. E. 1068; as to the contention of plaintiff in error, that the execution of mutual Wills constituted a part performance of an oral contract to which the Statutes of Fraud is not applicable, the authorities are classified about as follows:

(a) Oral agreements to devise real estate with no writing are void; Wallace vs. Long, 105 Ind. 522.

(b) Mutual Wills remaining unrevoked until death of one maker and the survivor causes probate of the other, accepts benefits, and later revokes his own will then equity will relieve; Carmichael vs. Carmichael (Mich.) 40 N. W.

173; Frazier vs. Patterson (Ill.) 90 N. E. 216 and cases cited.

(c) Oral agreements to devise by Will in consideration of service to be rendered and is rendered, and the one for whom rendered, either fails to make a Will or revokes one made, then services may be compensated for in money or a trust impressed; Stellmacher vs. Bruder (Minn.) 95 N. W. 324; Hamilton vs. Thirston (Md.) 48 A. 709; In Re Sheldon's Estate (Wis.) 97 N. W. 524 and other cases.

(d) Oral agreements to devise in consideration of a conveyance made pursuant to a valid contract are enforceable; Johnson vs. Hubbell (N. J.) 2 Stockton's Chap. 332; also mutual Wills made by husband and wife under circumstances indicating a prior oral agreement the Statute of Frauds is held not involved; Stevens vs. Myers (Ore.) 177 Pac. 37; Anderson vs. Anderson, (Iowa) 164 N. W. 1042.

(f) Agreement to devise in consideration of marriage and after marriage a Will is executed, is held in at least one state a sufficient performance to satisfy the Statute of Frauds; Lowe vs. Bryan (Ga.) 76 Am. Dec. 673.

(g) Oral agreements to make mutual Wills, which are executed without reference to contract and one party during the lifetime of both revokes without notice and dies, courts are divided, but the majority seem to hold such contracts void; Gould vs. Mansfield supra; In Re Edwall's Estate (Wash.) 134 P. 1041; and cases cited. A contract to make a Will of land cannot be established by parol evidence. And a subsequent Will revoking the former voids the agreement; Burns vs. McCormick, 233 N. Y. 230; and cases cited apparently constituting the clear weight of authority; 25 R. C. L. p. 585; Baumann vs. Kusian (N. S.) 44 L. R. A. 757. In the case at bar there was a subsequent Will. Wills of the same date containing the same mutual provisions made by husband and wife, are generally upheld where the rights of children are involved; Stevens vs. Myers supra; Anderson vs. Anderson supra, but not otherwise 40 Cyc. 2118, 27 L. R. A. N. S. 511 and note. The

contract must be in writing if land is involved; the execution of the Wills adds nothing, for the reason that, the right to property is derived from a valid contract; 25 R. C. L. 306; Canada has not been prejudiced; he has given up nothing and he has destroyed his Will. The transaction was clearly within the Statute of Frauds; Knoff vs. Grace, 68 Colo. 529; Doty vs. Doty, 118 Ky.

BLUME, Justice.

This is an action brought by Thomas J. Canada, plaintiff, against the administrator, with the will annexed, of the estate of Mrs. Wiseman M. Hill, deceased, and Samuel W. Scott. The property involved in this case is Lot 15 in Block 243 in the city of Laramie, which was owned by said deceased during her lifetime and which she devised to said Samuel W. Scott by her last will. The plaintiff asked to have the defendants declared to be trustees of the said property, that the contract hereinafter mentioned be enforced, and that defendants be compelled to make a conveyance thereof to the plaintiff, alleging that about September 1, 1918, the plaintiff was the owner of Lot 16 in Block 243 in the city of Laramie, adjoining Lot 15 aforesaid, and that he and said decedent entered into a mutual agreement at the date last mentioned, each agreeing to make a will leaving, at death, the property so owned by them respectively to the other, so that the survivor might have the two lots on which to build, one of the lots being too small for such purpose; that pursuant to said agreement plaintiff and said deceased executed their respective wills, reciprocally devising to each other their respective properties above mentioned; that on December 11, 1919, said deceased, fraudulently and without notifying plaintiff, attempted to rescind the said agreement by making a new will, revoking the former will and devising her property to said Samuel W. Scott, as above mentioned; that said new will was duly admitted to probate on October 14, 1920; that plaintiff fully performed all of the terms of the said agreement which he was to fulfill.

Issue was duly joined; the case was tried and judgment was rendered on June 4, 1923, in favor of the defendants and against the plaintiff. From such judgment said plaintiff, who will continue to be so denominated herein, has brought this case here by proceedings in error. The court found that the oral contract set up in the petition had been duly established by testimony other than that of plaintiff, but that oral proof of such contract was not admissible on account of the Statute of Frauds, the defense under which was set up by the defendants. Plaintiff and the deceased were not related to each other, and there was no consideration for the execution of the mutual wills unless the making of the contract and the execution of the wills is sufficient to satisfy the law in that respect.

1. Wills are, as courts express it, ambulatory in their nature, that is to say revocable at the pleasure of the testator until his death. In the absence of a contract there is nothing to hinder a testator of sound mind from changing his will as often as he pleases. At the same time a man may make a contract to leave his property by will in the same manner that he may make a contract to sell it. Schouler on Wills, sec. 694. It is said in Alexander v. Lewes, 104 Wash. 32, 175 Pac. 572, that such contracts are not favored, and the courts generally hold, upon good reason, that they must be clearly shown in order to be enforceable. If, however, they can be shown in the manner required by law, and if, further, they are based upon a valuable and sufficient consideration, there is no particular reason, we apprehend, why such contracts should be held to be against public policy. The case at bar involves a mutual will, in which the parties left their separate property reciprocally to each other. The principles of law applicable to contracts in connection with such wills, or in connection with joint wills, reciprocal in their nature, appear to be very much the same as those that are applicable when only one party agrees to make such a will, but the question of consideration, may, as in the case at bar, loom up much larger in the one case

than in the other. We should say at the outset that the following decisions hold that a contract for a will made under facts similar to those disclosed in the case at bar, except that the parties were related to each other, cannot be enforced. Phillips v. Murphy, 186 Ky. 763, 218 S. W. 250; Gould v. Mansfield, 103 Mass, 408, 4 Am. Rep. 573; Hale v. Hale, 90 Va. 728, 18 S. E. 739; Gooding v. Brown, 35 Hun (N. Y.) 148; Allen v. Bromberg, 163 Ala. 620, 50 So. 884; In re Edwall's Estate, 75 Wash. 391, 134 Pac. 1041; McClanahan v. McClanahan, 77 Wash. 138, 137 Pac. 479, 1915 A. 461. While at first blush there seems to be a disagreement in the holdings of the courts, in treating of mutual or joint wills, which are reciprocal, a close examination of the cases will disclose that the disagreement on the points involved herein is not great, and we have found no case and we have been cited to none, which has enforced a contract under facts as disclosed in the case at bar. Most of the cases, cited by plaintiff's counsel in support of their claim, are cases where one of the parties making a mutual will died leaving his will in force and effect, and where the survivor who received the benefits under the will of the party deceased attempted to revoke his will to the detriment of third parties who were benefited under both wills.

2. The first question presented is as to whether or not an agreement to devise real estate comes within the Statute of Frauds, as contemplated by section 4719, W. C. S. 1920, which provides, in so far as applicable here, as follows:

"In the following cases every agreement shall be void unless such agreement or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith. * * * Fifth—Every agreement or contract for the sale of real estate, or the lease thereof for more than one year."

A will is considered in the nature of a conveyance by way of appointment. A devisee comes within the legal definition of one who takes by purchase and the courts are nearly

unanimous in holding, under statutes such as we have in this state, that an agreement to devise real property is within the Statute of Frauds, and must be in writing. Cases cited supra; 27 C. J. 208, 209; Notes to 14 L. R. A. 862; 5 Ann. Cas. 495; 20 Ann. Cas. 1137; Ann. Cas. 1915A 463; 102 Am. St. Rep. 240. The only cases found holding to the contrary are Brown v. Webster, 90 Nebr. 591, 134 N. W. 185, 37 L. R. A. (N. S.) 1196; Woods v. Dunn, 81 Ore. 457, 159 Pac. 1158; and Turnipseed v. Sirrine, 57 S. Car. 559, 35 S. E. 757, 76 Am. St. Rep. 580. In the South Carolina case no real estate was involved, and it is not, accordingly, in point. In Nebraska, as disclosed by Brown v. Webster, supra, the statute provides that the provisions as to requirements of contracts in writing must "not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law," and that the powers of a court of chancery are in no way abridged to compel the specific performance of agreements in cases of part performance. Under this statute the Supreme Court of Nebraska held that an agreement to devise real estate need not be in writing. The statutes of Oregon are similar to those of Nebraska, as shown by Woods v. Dunn, supra. Our statute is different and we believe that the general rule held by the courts is applicable in this state.

3. Hence we must consider whether the statute has been complied with in the case at bar; that is to say whether the wills themselves should be construed as containing a sufficient memorandum of the agreement to satisfy the statute. There are cases which hold that the contract may be made out from the provisions of the wills themselves. These cases, however, are mostly cases in which a joint and reciprocal will was executed by the parties. It may not be illogical to hold that in such case the contract is sufficiently shown by the provisions of the will so made and signed by both parties. Frazier v. Patterson, 243 Ill. 80, 90 N. E.

216, 27 L. R. A. 508, 17 Ann. Cas. 1003; Rastetter v. Hoenninger, 151 App. Div. 853, 136 N. Y. Sup. 961, 214 N. Y. 66, 108 N. E. 210; Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56; Herman v. Ludwig, 186 App. Div. 287, 174 N. Y. Sup. 469; Williams v. Williams, 123 Va. 643, 96 S. E. 749. Thus it is said in Frazier v. Patterson, supra:

"If two persons make wills, each devising his property to the other, there is no necessary inference that the wills were the result of any mutual or reciprocal agreement or understanding. Such wills might be executed without either party knowing that the other had executed his will, but where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property."

The great weight of authority is to the effect that mutual wills, made by separate instruments, do not afford sufficient evidence that the wills were made pursuant to a contract, and that hence, if the contract is shown at all, oral evidence is necessary. Schouler on Wills (6th Ed.) sec. 721; Alexander's Commentaries on Wills, sec. 85; Watson v. Gordon, 73 S. Car. 155, 53 S. E. 79; Edson v. Parsons, 155 N. Y. 55, 50 N. E. 265; Wallace v. Wallace, 71 Misc. Rep. 305, 130 N. Y. Sup. 548; Wagner v. Marr, 257 Mo. 482, 165 S. W. 1027; In re Edwall's Estate, supra; Cawley's Appeal, 136 Penn. 628, 20 Atl. 567, 10 L. R. A. 93. In Hale v. Hale, supra, the court said:

"On the other hand the appellant contends that the case is not within the statute, because the wills in question are sufficient memoranda of the agreement to satisfy the requisitions of the statute. But can this view be maintained? We think not. An examination of the wills which are exhibited with the bill shows that each purports to be a mere will and nothing else. Neither alludes to any contract or refers to

any other writing; and the established rule is that the memorandum of a contract for the sale of real estate required by the statute, must show, either on its face or by reference to some other writing, the contract between the parties, so that it can be understood without having recourse to parol proof.''

In Alexander on Wills, where the author cites numerous authorities, it is said:

''The weight of authority is that such agreements to make wills are not established merely because two persons have made reciprocal testamentary dispositions in favor of each other, the language of such wills containing nothing to the effect that the instruments were the result of a contract. Some jurisdictions, however, have held that such fact causes the presumption to arise that the wills were executed pursuant to an agreement. The reasoning in such cases, however, does not seem cogent and general facts and circumstances are included to aid in arriving at the conclusion. Of course, in a proper case, where the question of a contract arises, the fact of the execution of mutual or reciprocal wills may be introduced in evidence as tending to prove a contract, but it is not conclusive. Even though a presumption is claimed, yet a presumption should not take the place of proof. It should require something more than the mere making of reciprocal testamentary dispositions to convert a revocable instrument into an irrevocable compact.''

In the case at bar there is nothing in the wills executed by either party to indicate that it is made pursuant to a contract. The wills are in the ordinary form. While, perhaps, the execution thereof about the same time, indicates that there was some sort of understanding between the plaintiff and the deceased, the exact nature of the contract is not thereby shown. It is not impossible, or even improbable, that some conditions were attached to the contract.

The decedent might have reserved the right to change her will upon change of circumstances, and the mere agreement to execute a will was not an agreement not to revoke it. We, accordingly, think that the wills alone are not sufficient memoranda to satisfy the Statute of Frauds.

4. It remains to consider whether or not there was sufficient performance on the part of the plaintiff so as to take the case at bar out of the statute. We are, fortunately, saved the trouble of discussing when part or full performance takes a contract out of the statute under the laws of this state in the ordinary case. The only performance that is claimed in the case at bar is the fact that the plaintiff executed the will in pursuance of the contract which he claims was made, and that he left his will in the custody of a third person. A similar situation is disclosed in the case of Gould v. Mansfield, supra, in which the court said merely: "There has been no part performance which amounts to anything." A like situation too was disclosed in the case of Hale v. Hale, supra, and the court said:

"The equitable doctrine of part performance is also invoked, but as to this we may say as was said in a similar case in Massachusetts: 'There has been no part performance which amounts to anything."

In re Edwall's Estate, supra, the court said:

"Some contention is made by counsel for appellant resting upon the theory of part performance on her part of the contract she relies upon. The record furnishes no evidence whatever of part performance unless we regard the mere execution of the wills by both testators as performance. We do not think that the mere making of a will, in pursuance of a contract required to be evidenced in writing by the statute of frauds, constitutes a part performance of such a contract so as to render the same enforceable."

To the same effect is McClanahan v. McClanahan, supra. In Gooding v. Brown, supra, the court said:

"Nothing can be regarded as requisite part performance to take such agreement out of the operation of the Statute of Frauds which does not place the party seeking relief in a situation which is a fraud upon him unless the execution of the contract be required in his behalf and for his protection.  *  *  *  The agreement here was executory; no rights of property could vest until the devise and bequest became effectual by the decease of the party making the will.  The fact that the plaintiff executed a will does not establish performance of the contract on his part so as to divest himself of any rights of property, nor did it place him in a situation from which he could not retreat without prejudice to any rights existing at the time the agreement was made.  The revocation by Wells Gooding of his will was a mere failure on his part to transfer his property by will to the plaintiff.  The latter lost nothing by the agreement or by any part performance of it; he simply failed to acquire by devise the estate of his brother.  The element of fraud, which equity will recognize in support of the right to execution of a contract within the statute, does not appear in this case."

In most of the cases dealing with mutual or joint wills, which hold that the Statute of Frauds has been satisfied, it appears that one of the parties to the contract died leaving his will in effect, and that the survivor accepted the benefit under the will of the decedent.  In such case the courts say, either that there has been full performance on the part of the decedent, or that the survivor is estopped from revoking his will by reason of the receipt of benefits.  Such cases are Rastetter v. Hoenninger, supra; Stevens v. Myer, 91 Ore. 114, 177 Pac. 37; 2 A. L. R. 1155; Prince v. Prince, 64 Wash. 552, 117 Pac. 255; Brown v. Johnson, 69 Colo. 400, 194 Pac. 943; Williams v. Williams, supra; Wallace v. Wallace, supra; Carmichael v. Carmichael, 72 Mich. 76, 40 N. W.

173, 1 L. R. A. 596, 16 Am. St. Rep. 528; Bower v. Daniel, 198 Mo. 289, 95 S. E. 347, Cawley's Estate, 136 Penn. 628, 20 A. 567, 10 L. R. A.; Deseumeur v. Randel, 76 N. J. Eq. 394; Larrabee v. Porter, (Tex. Civ. App.) 166 S. W. 395; Moore v. Moore, (Tex. Civ. App.) 198 S. W. 659; Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56. In a few of the cases other acts or a course of conduct were held sufficient part or full performance. See In re McGinley's Estate, 257 Penn. 478, 101 Atl. 807; Stewart v. Todd, (Ia.) 173 N. W. 619, 180 N. W. 146, 20 A. L. R. 1272; Herman v. Ludwig, supra; Bedal v. Johnson, 37 Idaho 359, 218 Pac. 641. But the facts in these cases were totally dissimilar to the facts in the case at bar. The element of fraud, the existence of which is essential in order that equity will take a case required to be shown by writing out of the statute, is not present here, and we are constrained to hold that the contract sued on has not been proved in the manner required by law.

5. Let us, however, further consider the case without reference to the Statute of Frauds, as has been done by some of the authorities. We find the broad statement at times that equity will enforce a contract to execute mutual wills. See Schouler on Wills, sections 720, 721. Such a contract, however, like any other, must not alone be just, but must also be based on a sufficient and valuable consideration—a principle of law founded on public policy. See Walpole v. Oxford, 3 Ves. Jr. 402. We have no doubt that contracts, thus supported, will be upheld by the courts. Chambers v. Porter, (Ia.) 183 N. W. 431, where the consideration was the settlement of property rights in connection with a divorce, seems to be such a case. See also Herman v. Ludwig, supra; Stewart v. Todd, supra; Bedal v. Johnson, supra. So, too, as we have heretofore noted, where one of the parties to the contract dies leaving his will in force and effect, and the other party enjoys the benefit thereof, it would be clearly unjust to permit the survivor to break his agreement, and such is the unanimous holding of the courts.

But we have no such case here.  If there was any consideration for the contract in question, it consists of the promises mutually made and the actual execution of the wills, left, so far as the plaintiff is concerned, in force and effect till after the death of Mrs. Hill.  We have already seen that this "amounts to nothing" as part performance.  Does it amount to more, viewed as a consideration?  We think not.  In the case of Humane Society v. McMurtrie, 229 Ill. 519, 82 N. E. 319, there was a joint will which sufficiently showed the contract made by the testators, whereby they left their property to each other, with additional provisions for the disposition of the property after the death of the survivor.  One of the wills was revoked, and the court held that this might be done, saying:

"A joint, mutual or reciprocal will, like any other, is ambulatory during the lives of the makers, and it may be revoked by either of them before his death.  The right of revocation cannot be doubted, at least as to either maker who has taken no benefit or advantage under the will."

In the case of Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. 508, it appears that one of the parties to a joint will died, leaving the will in force, the survivor enjoying the benefit thereof.  The court held that in view of this fact the will should be enforced as to the survivor, but said in the course of the opinion:

"To deprive either party of the right to revoke such mutual will, it is necessary to prove by clear and satisfactory evidence that such wills were executed in pursuance of a contract or a compact between the parties, and that each is a consideration for the other, and even in cases where mutual wills have been executed in pursuance to a contract or agreement between the parties, the rule appears to be well settled that either party may, during the lifetime of both, withdraw from the contract and revoke the will as to him.  A joint and mutual will is revocable during

the joint life by either party, so far as relates to his own disposition, upon him giving notice to the other, but it becomes irrevocable after the death of one of them, as the survivor may take advantage of the provisions made by the other.''

Campbell v. Dunkelberger, 172 Iowa 385, 153 N. W. 56, is a very similar case, and the court also in that case stated:

''In order that either party be denied the right to revoke such wills, it must appear by clear and satisfactory evidence or on the face of the wills that these were executed in pursuance of a contract or compact between the parties, each in consideration of the other; but even then either party may revoke during the lifetime of both, provided the other have notice of the intention of the revocation.''

Like language may be found in Larrabee v. Porter, (Tex. Civ. App.) 166 S. W. 395, and many authorities cited; Rastetter v. Hoenninger, 214 N. Y. 66, 108 N. E. 210; Everdell v. Hill, 27 Misc. Rep. 285; Note 136 A. S. R. 604.

These cases, or most of them, qualify the right of revocation by stating that notice thereof must be given during the lifetime of both. We think that such qualification is not applicable to a case like that at bar, if at all. If an agreement for the execution of a mutual or joint will is based upon a sufficient consideration, it ought not to be able to be revoked, notice or no notice. If the mutual agreement itself, followed by execution of the wills, is a consideration sufficient to satisfy the law, it should be irrevocable without reference to any notice that may be given by the party that wishes to revoke. The consideration, if sufficient, would continue to be so, and should be just as effective a bar to revocation after notice as before. So it must be apparent that the courts, in holding that a mutual or joint will may be revoked upon giving notice, in effect hold that the mutuality of the agreement, carried out by executing the will, is not in and of itself a sufficient consideration to support

the compact. The truth is that references in cases to the requirement of notice are all based upon dicta contained in the case of Dufour v. Pereira, as reported in 1 Dick 419, 21 Eng. Rep. 322, decided in 1769, where Lord Camden is reported as stating:

"Consider how far the mutual will is binding and whether the accepting of the legacies under it by the survivor is not a confirmation of it. I am of opinion it is. It might have been revoked by both jointly; it might have been revoked separately, provided the party intending it had given notice to the other of such revocation. But I cannot be of opinion that either of them could during their joint lives do it secretly; or that after the death of either, it could be done by the survivor by another will."

The case is reported at greater length in Hargraves' Juridical Arguments, vol. 2, p. 304, from which it appears that Lord Camden's decision is clearly based upon the proposition that one party should not be able to defraud the other. All else is dicta. The case is commented on at length in Stone v. Haskins, L. R. Probate Division, 1905, where the court holds that the death of one of the parties conveys sufficient notice to the other, summing up the law on this subject as follows:

"It appears to me that the result is tolerably plain. If these two people had made wills which were standing at the death of the first to die, and the survivor had taken a benefit by that death, the view is perfectly well founded that the survivor cannot depart from the arrangement on his part, because, by the death of the other party, the will of that party and the arrangement have become irrevocable; but that case is entirely different from the present, where the first person to die has not stood by the bargain and her "mutual" will has in consequence not become irrevocable. The only object of notice is to enable the other party to the bargain to alter his or her will also, but the survivor in the

present case is not in any way prejudiced. He has notice as from the death. I cannot see that the cases cited support the proposition for which the defendant contends, with the result that he must, I think, fail to obtain the declaration which he seeks.''

See also section 86 of Alexander on Wills.

We think that the death of one of the parties who has revoked the will should be held to convey sufficient notice to the other, at least where enough time elapses after such death to apprise the survivor of such revocation, enabling him to revoke his own will.

In the case of Turnipseed v. Sirrine, 57 S. Car. 559, 35 S. E. 757, 76 Am. St. Rep. 580, the trial court held that a mere family arrangement of property, by mutual wills, made by an aunt and a niece, acted upon by the aunt, was supported by sufficient consideration. The Supreme Court did not discuss that point, but decided the case on other grounds. In the later case of Buchanan v. Anderson, 70 S. Car. 454, 50 S. E. 12, the court, while holding that an alleged similar agreement had not been proven, also stated:

''There is no evidence of a valuable consideration to support an agreement between W. C. Anderson and his wife to dispose of their property·in the manner set forth in the will.''

It may, however, be, that certain arrangements of property, like that made among members of a family, should be put upon a somewhat different footing from those made between strangers in blood. In Lewis v. Lewis, 104 Kan. 269, 178 Pac. 421, the court says that such arrangements between husband and wife should be favored. That view is not dissimilar to the view adopted by the civil law. Alexander on Wills, sec. 70. Generally speaking, persons who made such contracts were, under the Roman law, considered as legacy-hunters. Gaius, a noted jurist of the second century of our era, applied that term to persons who were given an un-

divided portion of an inheritance as well as to those who received a legacy, and held such gifts to be void. Digest, Justinian 30, 64. Paul, another noted jurist, states that when a man appoints another as his heir upon condition that such other should in turn appoint a third person as heir, such appointment is void. Digest, Justinian, 28, 5, 72. On the other hand the famous Papinian wrote that the rule against the validity of reciprocal appointments does not apply where they are induced by mutual affection. Digest, Justinian, 28, 5, 71. And in 290 A. D. the emperor Diocletian, while affirming the general rule, relaxed it to the extent of permitting soldiers to make mutual wills on the eve of battle. Code, Justinian 2, 2, 19. In the case at bar the mutual wills were made by persons who were not related to each other. The consideration for the contract between the parties was not sufficient. The transaction smacks of gambling. Plaintiff has lost nothing, and he is entitled to nothing in this suit.

The judgment herein should accordingly be affirmed and it is so ordered.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.